**Jonathan Stone, Esquire**
**490 Schooley's Mountain Road–Bldg. 3A**
**Hackettstown, New Jersey 07840–4002**
**Tel. (908) 979–9919 / Fax. (908) 979–9920**
jonstonelaw@gmail.com
**Party in Interest**

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:                                    ) | **Case No. 11–45821 (MBK)** |
|                                            ) | |
| Diana A. Cook,                     ) | **Adv. No.** |
|                                            ) | |
|              Debtor.              ) | **Judge:  Michael B. Kaplan** |
|                                            ) | |
|                                            ) | **Chapter:  13** |
|                                            ) | |
|                                            ) | |
|                                            ) | |
| _____ ) | |

---

## (1) OPPOSITION TO MOTION TO VACATE, AND (2) CROSS–MOTION SEEKING RELIEF FROM THE AUTOMATIC STAY

---

Jonathan Stone, Esquire
490 Schooley's Mountain Road – Bldg. 3A
Hackettstown, New Jersey 07840–4002
(908) 979–9919
Party in Interest

On the Brief:
        Jonathan Stone, Esquire

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS.................................................................................................................6

LEGAL ANALYSIS ......................................................................................................................31

    I.      NO GOOD CAUSE EXISTS UNDER EITHER RULE 60(A) OR RULE 60(B) TO SEEK RELIEF FROM THE MARCH 16, 2015 ORDER APPOINTING STEPHANIE TETTEMER, ESQUIRE AS SPECIAL COUNSEL FOR THE DEBTOR ..31

    II.     GOOD CAUSE EXISTS FOR TERMINATING THE AUTOMATIC STAY ............................................................37

CONCLUSION ............................................................................................................................43

**TABLE OF AUTHORITIES**

C<small>ASES</small>

*Andrulonis v. United States,* 26 F.3d 1224 (2d Cir. 1994) -------------------------------------------39

*Baldino v. Wilson (In re Wilson)*, 116 F.3d 87 (3d Cir. 1997)--------------------------------------45

*Buggs v. Elgin, Joliet & E. Ry. Co.,* 852 F.2d 318 (7th Cir. 1988)----------------------------------35

*Coltec Indus., Inc. v. Hobgood,* 280 F.3d 262 (3d Cir. 2002)----------------------------------------35

*Eaton v. Schild*, 149 A. 637 (N.J. Dist. Ct. 1930) ---------------------------------------------------18

*Ellingsworth v. Chrysler,* 665 F.2d 180 (7th Cir. 1981) --------------------------------------------39

*Frenkel v. Frenkel*, 252 N.J.Super. 214 (App. Div. 1991) ------------------------------------------23

*In re Dale,* 505 B.R. 8 (9th Cir. BAP 2014)--------------------------------------------------------- 3, 9

*In re David,* 487 B.R. 843 (Bankr. S.D. TX 2013) --------------------------------------------------17

*In re Ice Cream Liquidation, Inc.*, 281 B.R. 154 (Bankr. D. Conn. 2002)---------------------------46

*In re Johnson,* 102 N.J. 504 (1986)------------------------------------------------------------------26

*In re Rosen,* 209 B.R. 345 (D. N.J. 1997)-----------------------------------------------------------45

*In re SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007) ---------------------------------------46

*In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990) ----------------------------------------- 45, 46

*In re Sound Radio, Inc.*, 145 B.R. 193 (Bankr. D.N.J. 1992) ---------------------------------------42

*In re Telegroup, Inc.*, 237 B.R. 87 (Bankr. D.N.J. 1999)----------------------------------------- 45, 46

*In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D.N.J. 1988) ------------------------------------45

*In re W. Tex. Mktg.,* 12 F.3d 497 (5th Cir. 1994) --------------------------------------------------35

*J.D. Pharm. v. Save-on Drugs,* 893 F.2d 1201 (11th Cir. 1990) -----------------------------------39

*Jasphy v. Osinsky,* 364 N.J.Super. 13, 834 A.2d 426 (App. Div. 2003)----------------------------18

*Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) ---------------------41

*LaPlace v. Briere,* 404 N.J. Super. 585, 962 A.2d 1139 (App. Div. 2009) -------------------------17

*Matter of Arkansas Co., Inc.,* 798 F.2d 645 (3d Cir. 1986) --------------------------------------- 43, 44

*Matter of Freehold Music Center,* 49 B.R. 293 (Bankr.D.N.J. 1985) -------------------------------43

*Moore's Trucking Co. v. Gulf Tire & Supply Co.,* 10 N.J. 22, 89 A.2d 306 (1952) ---------------18

*Moore's Trucking Co. v. Gulf Tire & Supply Co.,* 18 N.J.Super. 467, 87 A.2d 441 (App. Div.
     1952) ----------------------------------------------------------------------------------------------18

*Pfizer Inc. v. Uprichard,* 422 F.3d 124 (3d Cir. 2005)----------------------------------------------34

*Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380,
     113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ----------------------------------------------------------40

*Rastelli Brothers, Inc. v. Netherlands Insurance Company,* 68 F.Supp.2d 451 (D.N.J. Nov.3,
     1999) ----------------------------------------------------------------------------------------------41

*Sawka v. Healtheast, Inc.,* 989 F.2d 138 (3rd Cir. 1993) ------------------------------------------41

*State v. Goodmann*, 390 N.J.Super. 259, 915 A.2d 79 (App. Div. 2007) --------------------------18

*Stradley v. Cortez,* 518 F.2d 488 (3d Cir. 1975) ---------------------------------------------------35

*Todd v. Jackson*, 26 N.J.L. 525 (1857)--------------------------------------------------------------19

*United States v. Stuart,* 392 F.2d 60 (3d Cir. 1968) ------------------------------------------------34

S<small>TATUTES</small>

11 U.S.C § 327---------------------------------------------------------------------------------------10

11 U.S.C. § 105-------------------------------------------------------------------------------------42

11 U.S.C. § 1103(a)---------------------------------------------------------------------------------43

11 U.S.C. § 1306 ---------------------------------------------------------------------------------- 3, 9

11 U.S.C. § 327----------------------------------------------------------------------------2, 3, 9, 10
11 U.S.C. § 327(a) --------------------------------------------------------------------------43
11 U.S.C. § 348(f)(2) -----------------------------------------------------------------------44
11 U.S.C. § 362(d)(1)------------------------------------------------------------------------45
11 U.S.C. § 362(g) --------------------------------------------------------------------------45

OTHER AUTHORITIES

Advisory Comm. Op. 554-------------------------------------------------------------------3, 14, 23, 24

RULES

Bankruptcy Rule 9006(b)(1)-----------------------------------------------------------------40
*R*. 1:20A–5 -------------------------------------------------------------------------------4, 46
RPC 1.16(d) ------------------------------------------------------------------------------14, 23, 24
RPC 8.3(a)--------------------------------------------------------------------------------- 3
Rule 60(a) --------------------------------------------------------------------------------34, 38, 39
Rule 60(b) ------------------------------------------------------------------------- 34, 35, 39, 40, 41, 42

## PRELIMINARY STATEMENT

On December 29, 2014, Ms. Diana A. Cook, (hereinafter "Ms. Cook"), hired me as her

attorney to represent her as an individual facing a civil action, (hereinafter "Civil Action"), filed

against her by her brother.  In the Civil Action, Ms. Cook's brother asserts that Ms. Cook

violated her role as Power of Attorney and later Executrix for her late mother, (hereinafter the

"Decedent"), by in part:  1) deliberately transferring and diverting monies prior to and after the

Decedent's death for Ms. Cook's personal gain; 2) violating her fiduciary duties both prior to and

after the Decedent's death; and, 3) making fraudulent transfers after the Decedent's death to

reduce the value of the Decedent's Probate Estate.  The total fraudulent transfers both prior to

death and after death are alleged to exceed $171,600.00.  This Civil Action is brought before the

Superior Court of New Jersey – Warren County – Chancery Division – Probate Part, under

Docket Number P–13–276.  Mr. Charles Lee, Esquire, (hereinafter "Mr. Lee, Esquire"),

represents Ms. Cook's brother, (hereinafter "Plaintiff").

Ms. Cook brought a two part Counterclaim against Plaintiff in the Civil Action through

her first attorney, Mr. Ed Palmer, Esquire, (hereinafter "Mr. Palmer, Esquire").  Ms. Cook lost

both Count One and Count Two of the Counterclaim.  Ms. Cook told me she blamed Mr. Palmer,

Esquire for the dismissal of both counts of her Counterclaim; she alleged she was going to file

both a legal malpractice complaint and an ethics grievance against him.

Ms. Cook provided me with approximately 1,000 pages of copies of documents,

(hereinafter "The File"), for my use.  Ms. Cook retained the originals.

January 16, 2015 was Ms. Cook's deposition for the Civil Action.  Just prior to the

deposition starting, Ms. Cook advised me that she was "in bankruptcy".  I asked for clarification

and learned Ms. Cook was in a Chapter 13 bankruptcy with Joan Lavery, Esquire, (hereinafter "Ms. Lavery, Esquire"), as her bankruptcy attorney.

I was aware that my continued representation of Ms. Cook would need to be approved by the Bankruptcy Court under 11 U.S.C. § 327.  I explained to Ms. Cook that I needed to be retained as "special counsel" through the Bankruptcy Court to continue my representation in the Civil Action.  I also explained to Ms. Cook that the Bankruptcy Court needs to control administrative expenses and to prevent those performing work from interfering with the Bankruptcy Estate.  I prepared a bankruptcy Application for Retention of Professional and a proposed Order.  Because Ms. Cook did not know her bankruptcy case number, that information was missing.  Ms. Cook stated that she would like to speak to Ms. Lavery, Esquire.  I stated that that was her prerogative, but that I would have to postpone the deposition.  I further stated to Ms. Cook that it was her choice.  Ms. Cook elected to sign the Application and to proceed with the deposition.  Ms. Cook voluntarily reviewed and initialed each of the three pages and signed and dated the fourth page of the bankruptcy Application for Retention of Professional.

Mr. Lee, Esquire deposed Ms. Cook.  During the deposition, Ms. Cook revealed several facts that incriminated her, including her systematic financial abuse of her mother for over 15 years.

One of Mr. Lee, Esquire's exhibits was Ms. Cook's Bankruptcy Petition.  After the deposition, I took the bankruptcy case number from the Bankruptcy Petition, reprinted the bankruptcy Application for Retention of Professional with the bankruptcy case number, judge and vicinage identified, and asked Ms. Cook to resign.  Ms. Cook voluntarily complied; she initialed each page and signed.  Ms. Cook had the option to decline; she did not request nor do so.

- 2 -

The night of the deposition, Ms. Cook emailed me that she took a flight out of state to attend a funeral and was unavailable for an extended period of time.

Ms. Cook had not been forthcoming about her bankruptcy prior to this date.  11 U.S.C. § 1306 requires that Ms. Cook notify the Bankruptcy Court that she is entitled to an inheritance because Ms. Cook's creditors are entitled to an increased dividend from the Bankruptcy Estate. *See also In re Dale,* 505 B.R. 8 (9th Cir. BAP 2014).

After three attempts to be hired as special counsel and to be in compliance with 11 U.S.C. § 327 and RPC 8.3(a), on January 23, 2015, I filed a Motion to Withdraw as Counsel.  The Motion to Withdraw scheduled for February 17, 2015 was adjourned to March 11, 2015 at Ms. Cook's request.

Once I filed the Motion to Withdraw, Ms. Cook made a series of demands to obtain The File.  This back and forth with Ms. Cook regarding The File went beyond the normal path of attorney/client communication and client behavior.  I became alarmed that Ms. Cook had a suspect reason to retrieve The File as it may document Plaintiff's allegations.  Ms. Cook certainly can have her copies returned, but I needed to provide a chain of custody for my copy of The File and for me to be in compliance with Advisory Comm. Op. 554.  Ms. Cook's "pursuit" of The File escalated her costs.

On February 16, 2015, one of my employees brought The File to Staples for copying.

On February 17, 2015, Ms. Cook stole The File from Staples according to the police report by Officer Michael Camerata of the Mansfield Township Police Department.

On March 4, 2015, Ms. Cook admitted to Detective Joseph Mathews of the Mansfield Township Police Department, Criminal Investigation Bureau, that she stole The File.

Ms. Lavery, Esquire refused to file the Application for Retention of Professional.  I bring

to your attention that on March 10, 2015, Ms. Lavery, Esquire did file with the Bankruptcy Court

a bankruptcy Application for Retention of Professional for Stephanie Tettemer, Esquire to be

employed as special counsel for Ms. Cook as an individual.  On March 18, 2015, the Bankruptcy

Court granted an Order for Ms. Tettemer, Esquire to represent Ms. Cook in the Civil Action.

As stated, *supra,* on March 10, 2015, Ms. Cook hired Stephanie Tettemer, Esquire to

represent her individually.  I remained Ms. Cook's attorney of record in the Superior Court of

New Jersey until April 2, 2015 when I filed a Substitution of Attorney prepared and signed by

Ms. Tettemer, Esquire.  The Honorable John Purcel accepted the Substitution of Attorney and

my Motion to Withdraw was deemed moot.

*On this same date, Ms. Cook hand delivered and filed a Fee Arbitration Request Form*

*and alleged she filed an Ethics Grievance*.  Both contained seriously misleading and false

allegations.  For example, Ms. Cook alleged that she was without representation even though Ms.

Tettemer, Esquire filed a motion on Ms. Cook's behalf.  Ms. Cook also alleged she was unable to

seek new attorney representation because of The File although she has always been in possession

of her original documents.

Despite the fee arbitration confidentiality provision of *R.* 1:20A–5, Ms. Cook violated

confidentiality despite the clear instruction to maintain same *printed in bold* on Ms. Cook's

*voluntarily signed and submitted* Fee Arbitration Request Form.  Despite Ms. Cook's contractual

obligation to maintain confidentiality, she disclosed the contents of the Fee Arbitration Request

and libeled me by making false statements on at least five websites (Google, Yelp, DexKnows,

Avvo, and AARP) starting March 16, 2015.

**- 4 -**

Ms. Tettemer, Esquire seeks to vacate the Order appointing her as special counsel to the Debtor based on Ms. Lavery, Esquire's alleged filing error. She asserts her retention was as special counsel for the Executrix, not the Debtor. But Ms. Tettemer, Esquire's own retainer agreement is with Ms. Cook, the Debtor, *not* with the Executrix.

On April 2, 2015, I signed and filed the Substitution of Attorney form which *Ms. Tettemer, Esquire prepared and signed*. In said Substitution of Attorney, Ms. Tettemer, Esquire agreed to take over the representation of Ms. Cook in her *individual capacity*, not as Executrix. Ms. Tettemer, Esquire herself perpetuated confusion on the matter.

Ms. Tettemer, Esquire allegedly wishes to represent Ms. Cook as the Executrix but no documentation supports this position. Up until May 15, 2015, all documentation states that Ms. Tettemer, Esquire represents Ms. Cook in her individual capacity.

On May 15, 2015, Ms. Tettemer, Esquire signed a Substitution of Attorney withdrawing from representing Ms. Cook in her individual capacity with Ms. Cook representing herself *pro se*. Therefore, Ms. Tettemer, Esquire's Motion to Vacate *nunc pro tunc* should be moot as a bona fide *pro se* substitution exists. I believe that Ms. Tettemer, Esquire will argue that if the Order appointing her as special counsel is vacated effective March 16, 2015, then my Substitution of Attorney on file as of April 2, 2015 is of no force and effect. Her use of *nunc pro tunc* wording gravely prejudices my withdrawal from the case.

## STATEMENT OF FACTS

1.      I am an attorney at law in good standing in the State of New Jersey.  I am the

former attorney attorney of record for Ms. Cook in her individual capacity as Defendant in the

Superior Court of New Jersey – Chancery Division – Probate Part – Warren County under the

caption, "In the Matter of the Estate of Rafaela Alvarez, Deceased, John Alvarez, Plaintiff vs.

Diana Cook, Executrix, Defendant" under Docket Number P–13–276.

2.      I am familiar with the facts and circumstances forming this Opposition to Ms.

Tettemer, Esquire's Motion to Vacate and I have personal knowledge of the facts stated herein.

3.      On December 29, 2014, Ms. Cook hired me as her attorney to represent her as an

individual in the Civil Action brought against her by Plaintiff.  *See* **Exhibit A**, a true and

accurate copy is attached.  She initialed each page and signed my retainer agreement and paid a

retainer of $2,500.00.  *See* **Exhibit B**, a true and accurate copy is attached.  Note that Ms. Cook's

check was backdated to December 12, 2014.  *See id.*  Note also that Ms. Cook paid the Fee

Arbitration Committee $50.00 fee out of the Decedent's Estate.  *See* **Exhibit C**, a true and

accurate copy is attached.

4.      On this date, Ms. Cook advised me that she brought a two part Counterclaim

through her first attorney, Mr. Palmer, Esquire.  Count One was for an $8,000.00 loan made in

2000 that the Decedent made to Plaintiff.  Count Two was to recast student loans that the

Decedent co–signed with Plaintiff.  Ms. Cook lost both Count One and Count Two of each

Counterclaim.  Count One was dismissed because Ms. Cook was nine years beyond the statute of

limitations.  Count Two was dismissed because there was no issue before the Court.  Ms. Cook

blamed Mr. Palmer, Esquire for the dismissal of her Counterclaim.  Ms. Cook told me that she

was going to file a legal malpractice claim against Mr. Palmer, Esquire.  Ms. Cook also told me

that she was going to go to Mr. Palmer, Esquire's office to demand her file and that if he did not

immediately turn it over, she was going to file an ethics grievance.  I did not encourage her to

file either action.

5.      By December 31, 2014, Ms. Cook, Mr. Palmer, Esquire (first counsel) and I

(second counsel) signed the Substitution of Attorney.  *See* **Exhibit D**, a true and accurate copy is

attached.

6.      In the Civil Action, Plaintiff moved to compel an accounting of the Decedent's

Estate.  Additionally, at a minimum, Plaintiff sought to remove Ms. Cook as Executrix for

having a conflict of interest and for suspect transfers of Decedent's investment accounts.  *See*

**Exhibit E**, a true and accurate copy is attached.

7.      Ms. Cook provided me with approximately 1,000 pages of records for my file.

Ms. Cook stated that she has the originals and that I have only copies.

8.      The File was composed of *critical* discoverable evidence for the Civil Action.

9.      On January 16, 2015, Ms. Cook and I were scheduled to meet at 8:30am in my

office to prepare for deposition that morning.  I arrived at approximately 8:15am.  Ms. Cook

arrived between 9:05am to 9:10am.  Just prior to the deposition by Mr. Lee, Esquire, Ms. Cook

informed me that she was "in bankruptcy".  She had not previously advised me of her

bankruptcy.  I was stunned.  I was unaware of Ms. Cook's bankruptcy.  This was a key omission.

I asked to clarify if she were in a Chapter 7 or a Chapter 13.  She advised me that she was in a

Chapter 13.  I asked her who was the attorney handling her bankruptcy.  She stated that it was

Joan Lavery, Esquire, (hereinafter "Ms. Lavery, Esquire").

10.     I explained to Ms. Cook that it was mandatory for me to be retained as special

counsel through the Bankruptcy Court in order to continue my representation of her in the Civil

Action.  I explained to Ms. Cook that the Bankruptcy Court needs to control administrative

expenses and to prevent those performing work from interfering with the Bankruptcy Estate.  I

prepared a bankruptcy Application for Retention of Professional and a proposed Order.  Ms.

Cook stated that she would like to speak to Ms. Lavery, Esquire.  I said that that was her

prerogative, but that I would have to postpone the deposition.  I further stated to Ms. Cook that it

was her choice.  Ms. Cook reconsidered and voluntarily reviewed and initialed each of the three

pages and signed and dated the fourth page of the bankruptcy Application for Retention of

Professional.

       11.      Beginning at 9:30am, Mr. Lee, Esquire deposed Ms. Cook and she testified as

follows:

            a.      Ms. Cook revealed several facts that incriminated her including her

systematic financial abuse of her mother for over 15 years;

            b.      Mr. Lee, Esquire presented Ms. Cook's Bankruptcy Petition to Ms. Cook.

Ms. Cook made it known that she filed a voluntary Chapter 13 Bankruptcy

Petition.  Pursuant to Public Access to Court Electronic Records,

(hereinafter "PACER"), the Bankruptcy Petition was filed with the United

States Bankruptcy Court, District of New Jersey, Trenton Vicinage with

the case number of 11–45821 (MBK);

            c.      Ms. Cook filed the Chapter 13 Bankruptcy Petition through Ms. Lavery,

Esquire;

            d.      Ms. Lavery, Esquire is the bankruptcy attorney of record;

            e.      After the filing of the Chapter 13 Bankruptcy Petition, Ms. Cook became

entitled to an inheritance due to the death of her mother, the Decedent;

f.      The Bankruptcy Petition fails to disclose said post–petition inheritance, in violation of 11 U.S.C. § 1306.  *See also In re Dale,* 505 B.R. 8 (9th Cir. BAP 2014);

g.      Said Chapter 13 bankruptcy has not been closed, dismissed, or converted to a case under Chapter 7, 11 or 12; and

h.      Ms. Cook allegedly transferred monies from her mother to herself both prior to and after her mother's death.

12.     It was on this date that I first learned that Ms. Cook is in bankruptcy.  Ms. Cook was not forthcoming.  This was a significant omission by an articulate, educated, and savvy individual.

13.     After the conclusion of the deposition, I prepared a second bankruptcy Application for Retention of Professional and a proposed Order so I could add the proper case number, vicinage, judge, and etcetera.  I reiterated to Ms. Cook again that I need to be retained as special counsel through the Bankruptcy Court to continue my representation of her in the Civil Action.  I also re–explained to Ms. Cook that the Bankruptcy Court needs to control administrative expenses and to prevent those performing work from interfering with the Bankruptcy Estate.  Voluntarily, Ms. Cook reviewed and initialed each of the three pages and signed and dated the fourth page of the bankruptcy Application for Retention of Professional. *See* **Exhibit F**.

14.     I prepared said bankruptcy Application for Retention of Professional in accordance with the mandatory bankruptcy requirements of 11 U.S.C. § 327.

15.     I also prepared and signed a bankruptcy Certification of Professional in accordance with the mandatory bankruptcy requirements of 11 U.S.C § 327.

16.     On January 16, 2015, I emailed Ms. Lavery, Esquire with an email attachment of

a signed bankruptcy Application for Retention of Professional and a proposed Order Authorizing

Retention of Jonathan Stone, Esq.  *See* **Exhibit G**, a true and accurate copy is attached.  In said

email, I informed Ms. Lavery, Esquire of the deposition.  *See id.*  I also stated that for me to

continue representing Ms. Cook in the Civil Action, I need the signed bankruptcy Application for

Retention of Professional filed and approved by the Bankruptcy Court.  *See id.*  Furthermore, I

stated, "If this matter does not settle, Ms. Cook may require additional representation regarding

possible bankruptcy fraud."  *See id.*

17.     On January 16, 2015, at 4:53pm, I sent an email with an email attachment to Ms.

Cook requesting payment of $3,917.24.  *See* **Exhibit H**, a true and accurate copy is attached.

Ms. Cook replied that she was on a plane.  *See id.*

18.     On January 17, 2015, at 10:23am, I emailed Ms. Lavery, Esquire advising her that

I placed in the mail the original bankruptcy Application for Retention of Professional and

original bankruptcy Certification of Professional so that she would be in possession of the

original, signed documents.  *See* **Exhibit I**, a true and accurate copy is attached.  This mail was

not returned to my office.

19.     Despite my three attempts to be in compliance with 11 U.S.C. § 327, Ms. Lavery,

Esquire failed to take any steps to be in compliance with the mandatory requirements.

20.     Therefore, on January 23, 2015, I filed a Motion to Withdraw.  *See* **Exhibit J**, a

true and accurate copy is attached.  The hearing was rescheduled twice and is now scheduled to

be heard April 7, 2015.

21.     On January 26, 2015, I emailed Ms. Cook which stated in relevant part:

I had to file and serve a motion to withdraw as counsel.  Please
search out an (sic) successor attorney at this time.

*See* **Exhibit K**, a true and accurate copy is attached.

22.     On January 26, 2015, Ms. Cook requested by email to:

meet with her on Thursday, January 28 for a few minutes and pick
up her records & settle up as well?

*See* **Exhibit L**, page 2, a true and accurate copy is attached.  (Comments added).  This began a

series of ten communications regarding The File and the cost of copying same.

23.     Paragraph 7 of the Retainer Agreement states in relevant part as follows:

If you require a copy of your file for new counsel, You shall be
responsible for the reasonable copying costs of those portions of the
file copied.

*See* **Exhibit A**.

24.     Ms. Cook did not come to my office on January 28, 2015 as she requested.

25.     On January 28, 2015, at 9:29pm, Ms. Cook sent me an email stating in relevant

part:

I would like to pick up my personal files tomorrow.  Please confirm
that I will be able to pick them up.

*See* **Exhibit L**, page 2.  (Comments added).

26.     Despite sending a late evening email, I replied to Ms. Cook on January 29, 2015,

at 7:28am.  I replied that she is welcome to stop by.  *See* **Exhibit L**, page 2.  (Comments added).

27.     On January 29, 2015 at 10:28am, Ms. Cook came to my office.  I again explained

to Ms. Cook again that it is compulsory for me to have a copy of The File and she is responsible

for the copying costs pursuant to our retainer agreement.

**- 11 -**

28.    At this meeting in my office, Ms. Cook agreed that she would pay Staples for the

cost of copying The File and my office would take The File over to Staples, Mansfield

Township, New Jersey.  Ms. Cook failed to "settle up" the fee despite her January 26, 2015

email.  *See* ¶22.  This is a violation of our retainer agreement.

29.    On January 29, 2015, at 5:00pm, Ms. Cook stated in her email:

> Jon, I thought I was going to get my original today.  Can u plz let
> me know what the status of that is?

*See* **Exhibit L**, page 2.  (Comments added).

30.    On January 30, 2015, at 2:13pm, I responded to Ms. Cook again.  I advised her

that:

a.    Again, all I have are copies, not originals;

b.    Ms. Cook was going to make payment arrangements with Staples;

c.    My office would take The File over to Staples for copying;

d.    Ms. Cook called earlier that morning asking to meet me at Staples to assist
with the copying of The File.  We never spoke about meeting at Staples to
copy The File, nor would I have agreed to do so;

e.    As of January 29, 2015, "Dana" at Staples told me that Ms. Cook never
spoke to her or "Dean", Dana's co–worker, regarding payment;

f.    based on yesterday's email and Ms. Cook's lack of communicating with
Staples, I retrieved The File; and

g.    I made a new offer that she pay me $300.00 for the estimated cost of
copying.  Once the check cleared, my office would take The File over to
Staples for copying.

*See* **Exhibit L**, page 1.  (Comments added).

- 12 -

31.     On January 31, 2015, at 9:30am, Ms. Cook rejected my January 30, 2015 offer:

> John, I'm sorry for the miss understanding. I did not realize I was to
> meet you @ staples or to arrange payment.   If u give me the The
> (sic) book, the letters in the plastic cover, the folders I can make u a
> complete copy @ no cost to either of us.

*See* **Exhibit L**, page 1.  (Comments added).

32.     On February 1, 2015, at 4:59pm, Ms. Cook sent me an email stating that she will

be back (to the United States) on February 10, 2015.  Then on February 11, 2015, upon her

return, she could pick up The File, make a copy of it herself, return same to me, and she would

pay me $200.00.  *See* **Exhibit L**, page 1.  (Comments added).

33.     With Ms. Cook now out of the country until February 10, 2015, I waited for her

return to respond.

34.     On February 10, 2015, Ms. Cook requested via telephone that she pick up The

File.

35.     On February 10, 2015, at 10:56am, I sent an email to Ms. Cook referring her to

my January 30, 2015 email in that I need a copy of The File for my records.  *See* **Exhibit M**, a

true and accurate copy is attached.

36.     This back and forth with Ms. Cook regarding The File went beyond the normal

path of attorney/client communication and client behavior.  I became alarmed that Ms. Cook had

a suspect reason to retrieve The File as The File may document some of the Plaintiff's

allegations in the Civil Action.  Ms. Cook certainly can have The File.  But I would not release

my only copy to her with merely her promise to make a copy for me.  Establishing an

uninterrupted chain of custody for a copy of The File was critical and preserved my compliance

with RPC 1.16(d) and Advisory Comm. Op. 554.

37.     On February 10, 2015 at 12:12pm, Ms. Cook stated via email that she spoke to

"Dana P" at Staples and stated that she does not want to pay for copying The File when she can

make copies of The File herself.  *See* **Exhibit M**.

38.     On February 12, 2015, I sent to Ms. Cook a Pre Action Letter along with a

detailed, updated invoice for $9,089.49.  *See* **Exhibit N**, a true and accurate copy is attached.

Ms. Cook's erratic behavior regarding The File increased her legal fees.

39.     On February 16, 2015, Ms. Cook, came into my office unannounced.  Ms. Cook

agreed that she would pay me $300.00 for the estimated copying costs of The File at Staples.

40.     On February 16, 2015, Ms. Cook paid me said $300.00.  At approximately

1:00pm, Sabine Elsasser, (hereinafter "Sabine"), from my office took The File to Staples for

copying pursuant to my agreement with Ms. Cook.

41.     Sabine advised "Dana P" from Staples not to give The File to our client, Ms.

Cook.

42.     Due to Ms. Cook's relentless pursuit of The File, on February 17, 2015, at

approximately 10:00am, I went to Staples to speak with "Dana P".  I advised "Dana P" that it

was my belief that Ms. Cook may pretend to be a representative of my office in order to obtain

The File.  "Dana P" assured me that The File would remain in a safe place and that she would

advise the other two employees that photo identification would be required to retrieve The File.

"Dana P" also assured me that if she or her co–workers were unsure, they would call my office

for verification.

43.     In the afternoon of February 17, 2015, "Dana P" from Staples advised my office

that Ms. Cook entered onto Staples property, went behind the Staples' Copy Center desk, and

"took The File".  Later that same day, Officer Michael Camerata from the Mansfield Township

Police Department advised me of the theft.  The police report documents that a female entered

Staples "and threw down a bunch of documents on the counter and left the store" later that

evening.  *See* **Exhibit O**, a true and accurate copy is attached.  A Staples employee determined

that it was a portion of The File.  *See id.*  The police delivered to me a sealed bag and it remains

sealed in my office.  I have not verified its contents.

      44.     I believe that Ms. Cook stole The File so as to continue a criminal, illegal, or

fraudulent act likely to result in substantial injury to the financial interests of the Probate Estate

and the Bankruptcy Estate.

      45.     It is interesting to note that on January 29, 2015, Ms. Cook amended her

Bankruptcy Plan to overpay her creditors, thereby removing as an issue any damage to the

Bankruptcy Estate.  *See* **Exhibit P**, a true and accurate copy of the Order dated March 17, 2015

is attached.  However, by overpaying her creditors, Ms. Cook further damaged the Probate Estate

by diminishing it.  Also note that Ms. Cook uses a fictitious first name "Diane" and not her real

first name of "Diana" despite signing under penalty of perjury.  *See* **Exhibit Q**, a true and

accurate copy is attached.  Ms. Cook also fails to list "All Other Names used by the Debtor in the

last 8 years".  *See id.*  In a similar bankruptcy case where the debtor used a fictitious name, the

Bankruptcy Court held that such conduct, "defiled the very temple of justice".  *In re David,* 487

B.R. 843, 870 (Bankr. S.D. TX 2013).

      46.     A bailment arises when a person leaves his chattel on the premises of another "if

the latter is given primary control of the chattel for the time being."  *LaPlace v. Briere*, 404 N.J.

Super. 585, 598, 962 A.2d 1139, 1146 (App. Div. 2009), quoting *Moore's Trucking Co. v. Gulf*

*Tire & Supply Co.*, 18 N.J.Super. 467, 469–70, 87 A.2d 441 (App. Div. 1952) (listing as

examples of bailments: "jewelry checked with a swimming pool attendant; diamonds delivered

to a retail jeweler 'on memorandum' for sale; automobile placed in shop to be washed; airplane stored in a hangar," (citations omitted)), certif. denied, *Moore's Trucking Co. v. Gulf Tire & Supply Co.,* 10 N.J. 22, 89 A.2d 306 (1952); *see also State v. Goodmann*, 390 N.J.Super. 259, 266–67, 915 A.2d 79 (App. Div. 2007) (holding that film left with a store for developing gave rise to a bailment); *Jasphy v. Osinsky*, 364 N.J.Super. 13, 15, 18, 834 A.2d 426 (App. Div. 2003) (noting that a bailment arose when plaintiff left her three fur coats with defendant for storage and cleaning).

47.    A possessory interest in the subject matter of a bailment is equivalent to actual ownership.  *See Eaton v. Schild*, 149 A. 637 (N.J. Dist. Ct. 1930).  In *Todd v. Jackson*, the Court of Errors and Appeals held, "A party in possession is, prima facie, the owner, and that possession will entitle him to recover to the extent of the injury done, unless the defendant show something in mitigation of the damages."  *Todd v. Jackson*, 26 N.J.L. 525, 538 (1857).

48.    Accordingly, there was a bailment between Staples and me.  I am the owner of The File, not Ms. Cook.

49.    On March 4, 2015, Ms. Tettemer, Esquire agreed to represent Ms. Cook in her individual capacity.  *See* **Exhibit R**, a true and accurate copy is attached. (Comments added).

Diana Cook as individual and not as executrix.

### AGREEMENT TO PROVIDE LEGAL SERVICES

THIS AGREEMENT is made between the Client, DIANA COOK, whose address is 19 Canada Goose Dr. Hom. , New Jersey referred to as "You", and **TETTEMER LAW OFFICES, LLC**, whose address is 130 Mansfield Street, Belvidere, NJ 07823, referred to as the "Law Firm".

1.  **Legal Services to be Provided.**  You agree that the Law Firm will represent you in the following matter:

In The Matter Of The Estate Of Rafaela Alvarez, Probate action
Docket No.: P-13-276

50.    On March 4, 2015, Ms. Cook requested via email that I submit a blank

Substitution of Attorney.  *See* **Exhibit S**, a true and accurate copy is attached.  This statement is

circumstantial evidence that Ms. Cook stole The File in that no mention was made of the

turnover of The File despite her ten ("10") prior attempts to receive same.  See ¶¶ 22, 25, 27, 28,

29, 31, 32, 34, 37, 39 and 40.

51.    Because there was an ongoing police investigation, I did not reply to this email.

52.    On March 5, 2015, Detective Joseph Mathews from the Mansfield Township

Police Department – Criminal Investigation Bureau investigated the theft of The File and

prepared a report.  *See* **Exhibit T**, a true and accurate copy is attached.  (Comments added).

53.    Detective Joseph Mathews concluded as follows:

a.    Ms. Dana R. Pandorf, employee at Staples, "advised that once the files

were dropped off on 2/16/15, the store received several phone calls from a

female asking about the files.  Dana further advised that the caller ID came

up as Diana Cook[]."  *See* **Exhibit T, pages 2 and 3**.

b.    February 18, 2015:  "At about 1423 hours I received an email from Mr.

Stone advising that he had received a certified letter from Diana Cook

dated 2/16/15 [a falsified date] stating 'I went to your office and left you

with the Estate of Rafaela Alvarez PNC Bank Check #129 for $300 and

you promised to get me my files by the end of today or tomorrow.  If I do

not receive my files by February 17th further action will be taken.' Mr.

Stone also provided the envelope which is stamped with postage from

2/17/15, and the certified tracking from the USPS which states the letter

was accepted at the Hackettstown Post Office on 2/17/15 at about 1354

hours and delivered on 2/18/15 at 1333 hours." *See* **Exhibit T, page 3**.

c.     "Dana stated than on 2/17/15, at approximately 14:30hrs, a customer

approached her and told her that a female was behind the employee

counter, grabbed several items, and walked out of the store with them."

*See* **Exhibit T, page 3**.

d.     "Dana then checked to find that the law office files had been missing,

which is when she reported it to the law office." *See* **Exhibit T, page 3**.

e.     "Ms. Pandorf also advises that at about 1950 hours she received a phone

call from Staples employee, Dean, advising that a female had come into

the store and threw down a bunch of documents on the counter and left the

store. The documents were bearing the name Diana Cook." *See* **Exhibit

T, page 4**.

f.     March 4, 2015:  Motive for Theft:  "I asked Ms. Cook if she took the

documents or should I be investigating an identity thief. She advised not

to look for someone else. I asked her if she had taken the paperwork from

Staples and she advised, 'I understood that my paperwork would be done

that day and I could get my file back.'" *See* **Exhibit T, page 5**.

g.     "Ms. Cook stated it is unbelievable he is reporting her for keeping her own

files[]." *See* **Exhibit T, page 5**.

h.     "I asked Ms. Cook what happened after the paperwork was brought to

Staples. She stated she isn't comfortable answering any more questions,

but advised me not to look for anyone else." *See* **Exhibit T, page 5**.

54.     On March 10, 2015, Stephanie Tettemer, Esquire (third counsel) notified me via

email with an email attachment that she filed a Motion which included a certification of Ms.

Cook.  *See* **Exhibit U**, a true and accurate copy is attached.  Said Certification of Ms. Cook

stated in relevant part:

> [Jonathan Stone, Esquire] has a Motion pending for Leave to
> Withdraw as Counsel, However (sic) has to this day retained some
> of my information in his office.  He held all of my files after requests
> that I be permitted to pick them up.

*See* **Exhibit U**, **Certification of Diana Cook, ¶ 5**.

55.     I believe that Ms. Cook had self–serving reasons for filing this false certification

as she follows this false certification with two actions against me.

56.     On March 10, 2015, at 4:29pm, Ms. Cook notified me via email that she *hand*

*delivered and filed a "fee arbitration complaint" with District Fee Arbitration Committee for*

*Morris County District X.  See* **Exhibit V**, a true and accurate copy is attached.  (Comment

added).  Said Fee Arbitration Request alleges that I am:

> withholding files to preclude me from retaining counsil (sic) to
> respond to his motion in a timely manner.

*See* **Exhibit V**.  This certification is false.  Ms. Cook stole The File and she always remained in

possession of her original documents.

57.     On March 10, 2015, at 4:32pm, Ms. Cook notified me via email that she *hand*

*delivered and filed an Ethics Grievance.  See* **Exhibit W**, a true and accurate copy is attached.

(Comment added).  In the Ethics Grievance, Ms. Cook alleges:

> [] he is withholding some of my personal documents deliberately
> precluding me from responding to his motion as well as the
> plaintiff's motion a (sic) timely matter (sic) causing me the potential
> for great legal and financial harm.

*See* **Exhibit W**.  Again, this certification is false.

58.    In the morning of March 11, 2015, Chambers notified me that my Motion to

Withdraw was adjourned to April 7, 2015 to be held in concert with Plaintiff's Motion for

Summary Judgment.

59.    On March 11, 2015, I sent an email and fax to Ms. Tettemer, Esquire, whom I

believe has The File and, if so, is in receipt of stolen property.  Said email and fax stated:

> Dear Ms. Tettemer:
>
> Advisory Comm. Op. 554 states than an attorney has an independent
> interest in retaining the original file "for his protection against
> possible malpractice suits, or an ethical or tax inquiry."  Thus, the
> lawyer's obligation under RPC 1.16(d) may be satisfied by
> delivering a copy of the file to the former client.  *See Frenkel v.
> Frenkel*, 252 N.J.Super. 214, 221 (App. Div. 1991).  With respect to
> copying costs, the Advisory Committee concluded in Opinion 554
> that the burden should rest on the client and/or his new counsel.
>
> Yesterday, March 10, 2015, Ms. Cook filed a complaint with the
> District Fee Arbitration Committee for the Morris County District
> X and also filed an Ethics Complaint.  In case you did not know,
> Ms. Cook stole the file.  I need a copy of the file for my records so
> I can defend myself against Fee Arbitration and the Ethics
> Complaint.
>
> Please provide me with a copy of the file at this time by no later than
> this Friday, March 13, 2015.

*See* **Exhibit X**, a true and accurate copy is attached.

60.     On March 11, 2015, Ms. Tettemer, Esquire emailed me refusing to comply with

her ethical obligation to provide me a copy of The File:

> Mr. Stone,
>
> I fully appreciate your need and ethical obligation to retain a file for
> seven years and concur that you need your entire file. I, similarly,
> need an entire file. I am here this weekend working on Saturday and
> can go through the file with you, to see what you have that I do not
> so that we can make copies of  what is here that you should have.
> Alternatively, we can each copy everything in the files that we have
> at a local shop and just drop if off to one another's office on Monday.
> Advise me what works best for you.
>
> Stephanie P. Tettemer

*See* **Exhibit Y**, a true and accurate copy is attached.

61.     On March 11, 2015, I sent an email to Ms. Tettemer, Esquire reminding her of her

ethical obligation to provide me a copy of The File:

> Dear Ms. Tettemer:
>
> Thank you for the opportunity to advise you what works for me.  As
> stated in my March 11, 2015 email to you, please provide me with a
> copy of the entire, extensive file no later than 5:00pm, Friday, March
> ` (sic) 3, 2015. Doing so keeps us in the best compliance with
> Advisory Comm. Op. 554 and RPC 1.16(d).

*See* **Exhibit Z**, a true and accurate copy is attached.

62.     On March 11, 2015, Ms. Tettemer, Esquire emailed me refusing for a second time

to comply with her ethical obligation to provide me a copy of The File:

> Mr. Stone
>
> Not a problem. Kindly provide a copy of what you have as well and
> advise if you are serving a petition upon the bankruptcy trustee for
> representation of Ms. Cook nunc pro tunc with the deposition and
> certification of services. I will be asking Mr Palmer for a copy of his

petition as well and would like that all squared away before we
return to Court so both of your applications for fees can be addressed
and resolved rather than waiting until the matter is resolved in toto.

Stephanie P Tettemer

*See* **Exhibit AA**, a true and accurate copy is attached.

63.    Eerily similar to her client, I believe that there is a parallel process between Ms.

Cook and Ms. Tettemer, Esquire.  There are simply too many communications regarding The

File which I still do not have in my custody.

64.    On March 13, 2015, I learned that Ms. Cook submitted two filings with the

Superior Court of New Jersey.  The first was on January 28, 2015 and the second was on January

29, 2015.  In each filing, Ms. Cook notified the Court and opposing counsel, but not me *as she

should have*.  *See* **Exhibit BB**, a true and accurate copy is attached.  I believe that Ms. Cook's

statement alluding to "great legal and financial harm" is her conscious path to the *trifecta of

lawyer complaints*, namely the filing of a future legal malpractice action after the filing of both a

Fee Arbitration Request and an Ethics Grievance.

REMAINDER OF PAGE BLANK

- 22 -

65.    On March 4, 2015, Ms. Cook certified that she copied me on the following

correspondence that she sent to the Superior Court of New Jersey:

March 4, 2015

Diana Cook
19 Canada Goose Drive
Hackettstown, NJ 07840

VIA HAND DELIVERY
Warren County Surrogate Court
413 Second Street
Belvidere, New Jersey 07823

      Re:    In The Matter Of The Estate Of Rafaela Alvarez, deceased
      Docket No.: P-12-335

Dear Sir / Madam:

      I submit this request to adjourn the upcoming hearing pending the signature of Mr. Stone on a
Substitution of Attorney.

      Thank you.

                  Very truly yours,

                  *DCook, Executrix*

                  **Diana Cook**

*cc Jonathan Stone*
*cc Charles Lee*

See **Exhibit CC**, a true and accurate copy is attached.  Ms. Cook deceived Superior Court of

New Jersey into believing that she copied me on this March 4, 2015 correspondence.  Ms. Cook

never sent this to me.  The first time I saw this exhibit was in responding to the Fee Arbitration

Request.  A misrepresentation to a tribunal "is a most serious breach of ethics because it affects

directly the administration of justice."  *In re Johnson,* 102 N.J. 504, 510 (1986).  The Court

recognizes that "the destructive potential of such conduct to the justice system warrants stern

sanctions."  *Id.* at 511.

66.    On March 16, 2015, Ms. Cook, also known as "Cookie", posted the following

review on the advertising site "DexKnows":

## Reviews of Jonathan Stone Esq CPA



My experience has been so bad that I had to issue a fee arbitration complaint and a ethics complaint. I would not recommend him at all because he uses the legal system against you. He will not return my personal files, he sided with the plaintiff's attorney against me, then he refused to return my files, he then demanded that I pay his file copies when I offered provide him with copies at my cost. This attorney files outrageous motions and expects you to pay outrageous fees for his absurd representation. DO NOT USE HIS SERVICES OR ANY REASON!!!!! Please only use highly recommended representation from referrals by local attorneys.

See **Exhibit DD**, a true and accurate copy of the website is attached.  *See also*

http://www.dexknows.com/business_profiles/jonathan_stone_esq_cpa-b103749/reviews

67.    On March 16, 2015, Ms. Cook, also known as "Cookie", posted the following

review on the advertising site "Yelp":



My experience has been so bad that I had to issue a fee arbitration complaint and a ethics complaint.  I would not recommend him at all because he uses the legal system against you.  He will not return my personal files, he sided with the plaintiff's attorney against me, then he refused to return my files, he then demanded that I pay his file copies when I offered provide him with copies at my cost. This attorney files outrageous motions and expects you to pay outrageous fees for his absurd representation.
DO NOT USE HIS SERVICES OR ANY REASON!!!!!
Please only use highly recommended representation from referrals by local attorneys.

See **Exhibit EE**, a true and accurate copy is attached.  *See also*

http://www.yelp.com/biz/jonathan-stone-hackettstown

       68.    On March 16, 2015, Ms. Cook, also known as "Di Cook", posed the following

review on the advertising site "Google":



**Di Cook**
in the last week

★☆☆☆☆  My experience has been so bad that I had to issue a fee arbitration complaint and a ethics
complaint.  I would not recommend him at all because he uses the legal system against you.  He will not
return my personal files, he sided with the plaintiff's attorney against me, then he refused to return my
files, he then demanded that I pay his file copies when I offered provide him with copies at my cost. This
attorney files outrageous motions and expects you to pay outrageous fees for his absurd
representation.
DO NOT USE HIS SERVICES OR ANY REASON!!!!! Please only use highly recommended
representation from referrals by local attorneys.

*See* **Exhibit FF**, a true and accurate copy of the website is attached.  *See also*

*https://www.google.com/?gws_rd=ssl#q=jonathan+stone+bankruptcy+review&spell=1&lrd=0*

*x89c3837e67a005b3:0xa125a2895fd55e16,1*


REMAINDER OF PAGE BLANK

69.    On March 16, 2015, Ms. Cook, also known as "Cookie", posted the following

review on the advertising site "Avvo":

# Jonathan Stone's Reviews



Back to profile

## Average Rating

★ ★ ★ ⯪ ☆

Based on 3 reviews

Request a client review from a current or former client — it's easy!

**Request client reviews**

## WORST ATTORNEY EVER!

Posted by COOKIE, 4 days ago    ⚑ Flag

| | | |
|---|---|---|
| **Overall rating** | ★ ☆ ☆ ☆ ☆ | Poor |
| Trustworthy | ◉ ○ ○ ○ ○ | Poor |
| Responsive | ◉ ○ ○ ○ ○ | Poor |
| Knowledgeable | ◉ ○ ○ ○ ○ | Poor |
| Kept me informed | ◉ ○ ○ ○ ○ | Poor |

• I do not recommend Jonathan Stone.

My experience has been so bad that I had to issue a fee arbitration complaint and a
ethics complaint. I would not recommend him at all because he uses the legal system
against you. He will not return my personal files, he sided with the plaintiff's attorney
against me, then he refused to return my files, he then demanded that I pay his file
copies when I offered provide him with copies at my cost. This attorney files outrageous
motions and expects you to pay outrageous fees for his absurd representation.
DO NOT USE HIS SERVICES OR ANY REASON!!!!! Please only use highly recommended
representation from referrals by local attorneys.

*See* **Exhibit GG**, a true and accurate copy of the website is attached.  *See also*

*http://www.avvo.com/attorneys/07840-nj-jonathan-stone-1603393/reviews.html*

70.    On March 31, 2015, Ms. Cook, also known as "Di Cook", posted the following

review on the advertising site "AARP":



## Local Services

### Jonathan Stone ESQ CPA MST L.L.C.

**Address:** 490 Schooleys Mountain Road,
Hackettstown, NJ 07840-4002, United States
**Website:** www.jonstonelaw.com
**Phone:** (908) 979-9919





Reviews
**Di Cook**
Rating: ★☆☆☆☆
Tuesday, March 31, 2015

My experience has been so bad that I had to complain to the appropriate self-governing authorities. I would
not recommend him at all because he uses the legal system against you. He held my personal files, he
sided with the plaintiff's attorney against me, then he refused to return my files, he then demanded that I
pay his file copies when I offered provide him with copies at my cost. This attorney files outrageous motions
and expects you to pay outrageous fees for his absurd representation. DO NOT USE HIS SERVICES OR
ANY REASON!!!!! Please only use highly recommended representation from referrals by local attorneys.

*See* **Exhibit HH**, a true and accurate copy of the website is attached.  *See also*

http://local.aarp.org/local-services/jonathan-stone-esq-cpa-mst-llc-490-schooleys-mountain-

road-hackettstown.html

- 27 -

71.    On March 27, 2015, at 2:01pm, Ms. Cook filed with the Superior Court of New

Jersey and notified me via email with an email attachment acknowledging that she originally

gave me copies, and that she is again supplying copies to me, and for which she is charging me

for something which she stole:

March 26, 2015

<u>VIA CERTIFIED LETTER & EMAIL</u>

Jonathan Stone
490 Schooley's Mountain Road-Bldg. 3A
Hackettstown, NJ 07840-4002

Dear Mr. Stone:

Re: The Return Funds for Estate check # 129 & payment for copies
    Estate of Rojas-Alvarez
    Docket No. : P-13-276

It has been brought to my attention that I was not authorized to pay you a check from
the estate for copies for your file on February 16, 2015. Kindly return the funds via
money order or cashier's check for $300 made to "The Estate of Rafaela Rojas-Alvarez"
so I can return the funds back to the estate account.

It has also been brought to my attention that you are demanding more copies of my
files. My current attorney has provided me with copies from Staples that were made
from the copies I provided to her upon retainer.

It cost $412.47 for those copies of which comprised of copying cost of $337.47 (receipt
attached) plus postage and transportation cost of $75.  Please make the funds out to
Diana A Cook.  A self-address return envelope is enclosed for your convenience.

Regretfully,

Diana Cook

*See* **Exhibit II**, a true and accurate copy is attached.

72.    Note that the $300.00 that Ms. Cook references was applied to her outstanding

balance pursuant our agreement.  Note also that Ms. Cook had previously placed the copying

expense of The File at $50.00, but documents her expense of $412.47 for what she purports to be

The File.

73.    On April 2, 2015, I filed a Substitution of Attorney with the Superior Court of

New Jersey that was prepared and signed by Ms. Tettemer, Esquire.  *See* **Exhibit JJ**, a true and

accurate copy is attached.  (Comments added).

74.     In said Substitution of Attorney, Ms. Tettemer, Esquire agreed to take over the

representation of Ms. Cook in her individual capacity, not as Executrix.  *See* **Exhibit JJ**, page

13, which stated in relevant part:

STEPHANIE P. TETTEMER, ESQ.
NJ ATTORNEY ID 006911988
TETTEMER LAW OFFICES, LLC
130 Mansfield Street
Belvidere, New Jersey 07823
Telephone: (908) 475-0026; Facsimile (908) 475-0027
TETTEMERLAWOFFICES@GMAIL.COM
Attorneys for Diana Cook ← Diana Cook as individual and not as executrix

| In The Matter Of The Estate Of | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| RAFAELA ALVAREZ, Deceased. | CHANCERY DIVISION-PROBATE PART |
| | WARREN COUNTY |
| | DOCKET NO.:P-13-276 |
| | **SUBSTITUTION OF ATTORNEY** |

The undersigned hereby agree to the substitution of Stephanie P. Tettemer, Esq., of

Tettemer Law Offices, LLC as counsel for Ms. Diana Cook and the withdrawal of representation

of Jonathan Stone, Esq., in the within matter.

Diana Cook as individual and not as executrix

75.     On April 10, 2015, the Fee Arbitration Committee notified me that Ms. Cook

withdrew her Fee Arbitration Request.  It is my belief that Ms. Cook knew that she had no

intention of following through with her Fee Arbitration Request.  Ms. Cook used the tribunal to

extract as much damage from me.  *See* **Certification of Jonathan Stone**.

76.     On April 20, 2015, I spoke with Lisa Schwartz from Hill Wallack regarding Ms.

Cook's alleged request for them to institute an ethics grievance against me.  Ms. Schwartz stated

that at no point did Ms. Cook file any such request for an ethics grievance against me.  *See*

**Certification of Jonathan Stone**.

77.     On April 21, 2015, I contacted the Office of Attorney Ethics regarding the alleged

Ethics Grievance filed against me.  I was assured that Ms. Cook did not file any Ethics

Grievance against me, despite **Exhibit W** that purports otherwise.  *See* **Certification of**

**Jonathan Stone**.

78.    On May 15, 2015, Ms. Tettemer, Esquire withdrew from representing Ms. Cook

in her individual capacity.  *See* **Exhibit KK**, a true and accurate copy is attached.  (Comments

added).

79.    In said Substitution of Attorney, Ms. Tettemer agreed with withdraw from

representing Ms. Cook in her individual capacity, not as Executrix.  *See* **Exhibit KK**, which

stated in relevant part:

SUPERIOR COURT
WARREN COUNTY
FILED

MAY 1 5 2015

SURROGATE
DEPUTY CLERK

STEPHANIE P. TETTEMER, ESQ.
NJ ATTORNEY ID 006911988
TETTEMER LAW OFFICES, LLC
130 Mansfield Street
Belvidere, New Jersey 07823
Telephone: (908) 475-0026; Facsimile (908) 475-0027
TETTEMERLAWOFFICES@GMAIL.COM
Attorneys for Diane Cook  ← Diana Cook as individual and not as executrix

| In The Matter Of The Estate Of | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| RAFAELA ALVAREZ, Deceased. | CHANCERY DIVISION-PROBATE PART |
|  | WARREN COUNTY |
|  | DOCKET NO.: P-13-14 |

**SUBSTITUTION OF ATTORNEY**

The undersigned hereby agree to the substitution of Diane Cook, Executrix and the

withdrawal of representation of Stephanie P. Tettemer, Esq., in the within matter.

Stephanie P. Tettemer, Esq.              Diane Cook
Withdrawing Counsel for the Executrix    Superseding self-represented
Dated:                                   Dated:
  5\15\15                                   5)15)15

## LEGAL ANALYSIS

**I.**   **No Good Cause Exists under Either Rule 60(a) or Rule 60(b) to Seek Relief from the**

**March 16, 2015 Order Appointing Stephanie Tettemer, Esquire as Special Counsel**

**for the Debtor**

Ms. Tettemer, Esquire implies that she seeks relief pursuant to Rule 60(a) or Rule 60(b).

Rule 60(a) allows a district court to "correct a clerical mistake or a mistake arising from

oversight or omission whenever one is found in a judgment, order, or other part of the record."

Rule 60(b) allows a district court to "relieve a party or its legal representative from a final

judgment, order, or proceeding for ... (1) mistake, inadvertence, surprise, or excusable neglect; ...

or (6) any other reason that justifies."

Although similar, Rules 60(a) and 60(b) serve different purposes.  Rule 60(a) is limited to

correcting clerical mistakes that "do not really attack the party's fundamental right to the

judgment."  *Pfizer Inc. v. Uprichard,* 422 F.3d 124, 130 (3d Cir. 2005) (quoting *United States v.

Stuart,* 392 F.2d 60, 62 (3d Cir. 1968)).  The appropriate test for determining the applicability of

Rule 60(a) is "whether the change affects substantive rights of the parties and is therefore beyond

the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake."  *Id.*

(quoting *In re W. Tex. Mktg.,* 12 F.3d 497, 504–05 (5th Cir. 1994)).

On the other hand, Rule 60(b) permits a court to relieve a party from a final judgment or

order in a limited set of circumstances.  *See* Fed.R.Civ.P. 60(b).  Parties can invoke Rule 60(b) to

correct mistakes that are substantive in nature.  *See Stradley v. Cortez,* 518 F.2d 488, 493 (3d

Cir. 1975).  Subsection (1) seeks to correct "mistakes, inadvertence, surprise or excusable

neglect."  Fed.R.Civ.P. 60(b)(1).  The inadvertence can be on the part of the Court, rather than on

the part of a party.  *See Buggs v. Elgin, Joliet & E. Ry. Co.,* 852 F.2d 318, 322 (7th Cir. 1988)

(finding that Rule 60(b)(1) was the proper vehicle to correct the Magistrate Judge's oversight).

Subsection (6) functions as the catchall provision allowing relief for "any other reason that

justifies."  Fed.R.Civ.P. 60(b)(6).  Furthermore, subsection (6) provides "extraordinary relief and

motions under the catchall provision may only be granted upon a showing of "exceptional

circumstances."  *Coltec Indus., Inc. v. Hobgood,* 280 F.3d 262, 273 (3d Cir. 2002).

 Ms. Tettemer, Esquire's undated certification states in relevant part:

> I, Stephanie Tettemer Esq, hereby certify and state:
>
>  1) I am the attorney at law of the State of New Jersey.
>
>  2) I was contacted by the Debtor Diana A. Cook <u>to represent her as Executrix</u> of the Estate of
>
>   Rafaela Alvarez.

*See* Docket 67–1 (Emphasis added).

 *This certification is false.*  Instead, Ms. Tettemer, Esquire and Ms. Cook signed the

retainer agreement that identified that Ms. Tettemer, Esquire will represent Ms. Cook in her

*individual* capacity and not that as *Executrix*:

Diana Cook as individual and not as executrix.

**AGREEMENT TO PROVIDE LEGAL SERVICES**

THIS AGREEMENT is made between the Client, DIANA COOK, whose address is
19 Canada Geese Dr #7au , New Jersey referred to as "You", and **TETTEMER LAW
OFFICES, LLC,** whose address is 130 Mansfield Street, Belvidere, NJ 07823, referred to as the
"Law Firm".

 1. **Legal Services to be Provided.**  You agree that the Law Firm will represent you in the
following matter:

  **In The Matter Of The Estate Of Rafaela Alvarez, Probate action
Docket No.: P-13-276**

*See* **Exhibit R**.

On March 9, 2015, Ms. Tettemer, Esquire agreed to supersede as counsel to represent

Ms. Cook as an *individual* and not that as an *Executrix*:

STEPHANIE P. TETTEMER, ESQ.
NJ ATTORNEY ID 006911988
TETTEMER LAW OFFICES, LLC
130 Mansfield Street
Belvidere, New Jersey 07823
Telephone: (908) 475-0026; Facsimile (908) 475-0027
TETTEMERLAWOFFICES@GMAIL.COM
Attorneys for Diana Cook ←——— Diana Cook as individual and not as executrix

| In The Matter Of The Estate Of | SUPERIOR COURT OF NEW JERSEY |
|---|---|
| RAFAELA ALVAREZ, Deceased. | CHANCERY DIVISION-PROBATE PART |
| | WARREN COUNTY |
| | DOCKET NO.:P-13-276 |
| | **SUBSTITUTION OF ATTORNEY** |

The undersigned hereby agree to the substitution of Stephanie P. Tettemer, Esq., of

Tettemer Law Offices, LLC as counsel for Ms. Diana Cook and the withdrawal of representation

of Jonathan Stone, Esq., in the within matter.

Diana Cook as individual and not as executrix

*See* **Exhibit II**.

REMAINDER OF PAGE BLANK

On May 15, 2015, In said Substitution of Attorney, Ms. Tettemer, Esquire agreed with

withdraw from representing Ms. Cook in her *individual* capacity, not as *Executrix*.



*See* **Exhibit JJ**.

The record is clear in that Ms. Tettemer, Esquire's documents all point to her

representing Ms. Cook in her *individual* capacity, not as *Executrix*. There was no clerical

mistake. Nor was there a mistake arising from oversight or omission. Furthermore, Rule 60(a)

is inappropriate because Ms. Tettemer, Esquire is attacking my fundamental right to the

judgment. On April 2, 2015, I filed the Substitution of Attorney whereby Ms. Tettemer, Esquire

consented to take over as substitute counsel. By requesting *nunc pro tunc* relief, Ms. Tettemer,

Esquire can then allege that the Substitution of Attorney that I relied upon is null and void.

Because Ms. Tettemer, Esquire desires to change my substantive rights, her requested relief is

beyond the scope of Rule 60(a).

Ms. Tettemer, Esquire suggests that she is entitled to relief under Rule 60(b)(1) due to

mistake, inadvertence, surprise, or excusable neglect when she states:

> 4) When the order was forwarded to the court the application and order referred to me as counsel
>
> to the Debtor Ms Cook. This was inaccurate and when I became aware of the error I advised
>
> Debtors Counsel and she filed a withdrawal of the application to retain me on April 6 2015.

*See* Docket 67–1, paragraph 4.

Rule 60(b)(1) allows a district court to relieve a party from a final judgment on the basis

of demonstrated "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1).

Generally, a party is not liable for the consequences of events or situations that are beyond his

control. *Ellingsworth v. Chrysler,* 665 F.2d 180 (7th Cir. 1981) (holding that defendant was

"excused" under Rule 60(b)(1) for failure to appear at trial when the court created confusion

regarding the trial date). Deliberate and willful conduct is never cause to set aside a judgment.

*See J.D. Pharm. v. Save-on Drugs,* 893 F.2d 1201 (11th Cir. 1990) (refusing to grant relief from

summary judgment that resulted from defendant's refusal to answer requests for admissions

because refusal was a deliberate decision to delay litigation); *see also, Andrulonis v. United

States,* 26 F.3d 1224 (2d Cir. 1994) (refusing to set aside judgment after deliberate settlement).

A party is not entitled to relief from judgment under Rule 60(b)(1) even if that party was

harmed by the actions of his attorney which were out of his control. *See Pioneer Investment

Services Company v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 396–397, 113 S.Ct.

1489, 123 L.Ed.2d 74 (1993). In *Pioneer,* a bankruptcy petitioner was held accountable for the

negligence of his attorney under Bankruptcy Rule 9006(b)(1). *Id.* The Supreme Court held that

a party cannot avoid the consequences of the actions of his or her freely chosen agent. *Id.* at 397. Therefore, in order to be entitled to relief under Rule 60(b)(1), the conduct of the party and his counsel must be excusable. *Id.*

While Ms. Tettemer, Esquire does suggest that Ms. Lavery, Esquire was negligent in the preparation of her Application for Retention of Professional, *Pioneer* makes clear that a party is responsible for the inexcusable neglect of her attorney. *See In re Pioneer*, 507 U.S. at 397. More importantly, it was Ms. Tettemer, Esquire's deliberate and willful conduct that caused this Court to enter the Order to approve the Application of Retention of Professional. Ms. Tettemer, Esquire failed to establish grounds for why she or Ms. Lavery, Esquire should be excused from the consequences of their actions. Therefore, Ms. Tettemer, Esquire has not met her burden under Rule 60(b)(1).

Should Ms. Tettemer, Esquire argue that she is entitled to relief under Rule 60(b)(6), the catch–all subsection of Rule 60, that too should be denied. Under subsection (b)(6), a court has the power to vacate or stay its previous orders for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). Rule 60(b)(6) allows the court to remedy unforeseen injustices not addressed by the other subsections of Rule 60. Relief of this type is granted sparingly because vacating and granting relief from final judgments impairs the judicial system's compelling need for finality in litigation. *See Rastelli Brothers, Inc. v. Netherlands Insurance Company,* 68 F.Supp.2d 451, 453 (D.N.J. Nov.3, 1999). As such, Rule 60(b)(6) should only be invoked in the most "extraordinary circumstances, where, without such relief, an extreme and unexpected hardship would occur." *Rastelli,* 68 F.Supp.2d at 453, (quoting *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140 (3rd Cir. 1993)). The extraordinary circumstances that would warrant such relief were discussed in *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

In *Klapprott,* the Supreme Court granted relief from default judgment under Rule 60(b)(6) when a citizen was stripped of his citizenship by his Government, without evidence, a hearing, or the benefit of counsel, at a time when his Government was then holding the citizen in jail with no reasonable opportunity for him effectively to defend his right to citizenship.

Ms. Tettemer, Esquire failed to demonstrate any extraordinary circumstances, where, without such relief, an extreme and unexpected hardship would occur.  Therefore, her Motion to Vacate should be denied.


**II.**     **My Application for Retention as Special Counsel would have been Approved If Joan Lavery, Esquire Had Not Refused to File Same with this Court**

In certain limited circumstances, counsel whose retention has not been previously authorized by the court, may obtain such authorization *nunc pro tunc* from the date of retention. *See In re Sound Radio, Inc.*, 145 B.R. 193, 203 (Bankr. D.N.J. 1992).  In order to determine whether to issue a *nunc pro tunc* order to validate a previous failure to obtain approval, the Court set forth an equitable balancing approach borne out of the Court's equitable powers pursuant to 11 U.S.C. § 105.  A court should:

> ... weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been entered. It must further determine the emergent need for the services rendered and whether or not the debtors could have functioned without such services. Other factors for consideration include a determination of whose responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field.

*Matter of Freehold Music Center,* 49 B.R. 293, 296 (Bankr.D.N.J. 1985).

Subsequently, the United States Court of Appeals for the Third Circuit suggested that in extraordinary circumstances, bankruptcy courts may grant *nunc pro tunc* approval to professionals who had not obtained prior court approval. *See Matter of Arkansas Co., Inc.,* 798 F.2d 645, 649 (3d Cir. 1986). The *Arkansas* court expressly excluded inadvertence and oversight of counsel as extraordinary circumstances sufficient to excuse the failure of professionals to obtain prior approval. *See id.* The *Arkansas* court also mandated that prior to granting *nunc pro tunc* approval, a court must find "[t]hat it would have granted prior approval which requires a determination that the applicant satisfied the statutory requirements of 11 U.S.C. §§ 327(a) and 1103(a) ... and that the services performed were necessary under the circumstances." *Id.* at 650.

Pursuant to the *Arkansas* test, after the threshold determination is made under 11 U.S.C. § 327(a) and 11 U.S.C. § 1103(a), the court must evaluate whether the peculiar circumstances in a case excuse the failure to seek prior approval by considering the following:

> whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*Matter of Arkansas Co., Inc.,* 798 F.2d at 650.

On January 16, 2015, I learned that Ms. Cook was in bankruptcy. On this same date, Ms. Cook signed the Application for Retention of Professional. Also on this same date, I served Ms. Lavery, Esquire with same and I asked her to file the Application for Retention of Professional with the Bankruptcy Court. I contacted Ms. Lavery, Esquire a total of three times. Ms. Lavery, Esquire violated her duties to the Bankruptcy Court by refusing to sign same. Instead, Ms. Lavery, Esquire appointed Stephanie Tettemer, Esquire. *See* Docket 52.

I believe that Ms. Lavery, Esquire conspired with Ms. Cook to tortuously interfere with

my business, as Ms. Lavery, Esquire has done in the *In re Aiello* matter under case number 11–

41413 (MBK).  The *Aiello* case was converted from a Chapter 13 to a Chapter 7 with specific

findings of bad faith pursuant to 11 U.S.C. § 348(f)(2).  In the *Aiello* case, while Ms. Lavery,

Esquire was their bankruptcy attorney, Debtors filed an unfounded Ethics Grievance against me.

Once the Ethics Grievance was dismissed, Debtors then filed a legal malpractice case against me

which was also dismissed on December 29, 2014.  Undeterred, Ms. Lavery, Esquire found

another way to damage my business, by proxy, through her clients.  On January 23, 2015, upon

realizing that Ms. Lavery, Esquire would never file the Application for Retention of Professional,

on January 23, 2015, I filed a Motion to Withdraw.  Accordingly, *nunc pro tunc* approval should

be given to the Application for Retention of Professional.


### III.    Good Cause Exists for Terminating the Automatic Stay

11 U.S.C. § 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay . . . such as by terminating, annulling,
> modifying, or conditioning such stay for cause, including the lack of
> adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).  Other than for lack of adequate protection, the Bankruptcy Code does not

define the term "for cause", leaving courts to consider what constitutes cause based on the

totality of the circumstances in each particular case.  *See Baldino v. Wilson (In re Wilson)*, 116

F.3d 87, 90 (3d Cir. 1997).  A bankruptcy court is granted wide discretion to determine whether

to lift the automatic stay for cause.  *See In re Rosen,* 209 B.R. 345, 356 (D. N.J. 1997).

"The burden of proof on a motion to lift … the automatic stay is a shifting one." *In re

Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). "[S]ection 362(d)(1) requires an *initial*

showing of 'cause' by the movant, while [S]ection 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property.'" *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999) (emphasis in original) (citations omitted); <u>*Sonnax*</u>, 907 F.2d at 1285; *but see In re Todd Shipyards Corp.*, 92 B.R. 600, 602 (Bankr. D.N.J. 1988). "If the movant fails to make an initial showing of cause … the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." <u>*Sonnax*</u>, 907 F.2d at 1285; *see also In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 165 (Bankr. D. Conn. 2002).

Courts in the Third Circuit generally utilize a balancing of the hardships test when asked to permit pending litigation to proceed in a non–bankruptcy forum. <u>*Telegroup*</u>, 237 B.R. at 91–92.  The elements of that test are as follows:

> Whether (a) any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit, (b) the hardship to the [movant] by maintenance of the stay considerably outweighs the hardship to the [non–moving party], and (c) the [movant] has a probability or [sic] prevailing on the merits [of the claim].

*Telegroup,* 237 B.R. at 91 (brackets in (b) and (c) in original); *In re SCO Group, Inc.*, 395 B.R. 852, 856–57 (Bankr. D. Del. 2007).

Relief from the automatic stay should be granted because Ms. Cook:

a.   filed the Fee Arbitration Request and withdrew it at the last possible moment causing me as much harm as possible;

b.   breached *R.* 1:20A–5 by disclosing the contents of the Fee Arbitration Request.  She libeled me by making false statements on at least five websites (DexKnows, Yelp, Google, Avvo, and AARP), violating the fee arbitration process contract for confidentiality;

c.  defrauded the Office of Attorney Ethics by using their name to have me

believe that an Ethics Grievance was lodged against me;

d.  contractually consented with me as to how she can obtain a copy of The

File (retainer agreement and copy at Staples), but did not allow for Staples

to copy The File;

e.  stole The File from Staples;

f.  admitted to the police that she stole The File and provided her motive in

doing so;

g.  had motivation to steal The File so she could restrict and/or destroy the

information contained therein;

h.  acted in criminal, illegal or fraudulent ways that are likely to result in

substantial injury to the financial interest of the Probate Estate;

i.  documented by her email of January 26, 2015 that Ms. Cook offered to

"settle up" her outstanding bill but did not do so.  Nonpayment violates

our retainer agreement;

j.  falsely states that I advised her to file an ethics grievance against Mr.

Palmer, Esquire.  On December 29, 2014, Ms. Cook told me that she was

going to file a legal malpractice claim against Mr. Palmer, Esquire.  On

January 12, 2015, it was Ms. Cook who told me that she will file an ethics

grievance against Mr. Palmer, Esquire because he did not file an appeal of

the dismissal of Ms. Cook's Counterclaim.  I did not encourage her to file

either action; and

k.   committed a fraud by deceiving Superior Court of New Jersey into falsely

believing that I received court filings.


### A.    There is No Great Prejudice to Either the Bankruptcy Estate or Debtor if I File a Complaint in the Superior Court of New Jersey

I respectfully submit that I were to file a Complaint in the Superior Court of New Jersey to address these post–petition events, judgment will not result in great prejudice to either the bankruptcy estate or Debtor.  The proposed order attached to this Opposition and Cross–Motion requests that relief from the automatic stay occur becomes effective August 1, 2015, one day after Ms. Cook is due to complete her payments to Albert C. Russo, Standing Chapter 13 Trustee.


### B.    The Hardship to Me by Maintenance of the Stay Considerably Outweighs the Hardship to Ms. Cook

Ms. Cook has libeled me by false statements on at least five websites (Google, Yelp, DexKnows, Avvo, and AARP).  Ms. Cook stole The File from Staples and she admitted her motive for stealing The File to the police.  Her continuing fraud upon me deserves redress.


### C.    I have a High Probability of Prevailing on the Merits

I respectfully submit that I have a high probability to prevail on the merits of the allegations contained in the Complaint, once filed.  Ms. Cook admitted to the police for stealing The File and provided motive for stealing same.

## <u>CONCLUSION</u>

For the above–stated reasons, I respectfully request that the Court deny the Motion to

Vacate, and enter an Order granting relief from the automatic stay, and granting such other and

further relief as the Court deems just and proper.

Respectfully submitted,

By:    /s/ Jonathan Stone
       Jonathan Stone, Esquire
       Party in Interest

Dated:  May 17, 2015